IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Faurecia Automotive Seating, Inc.                                          Case No. 3:07CV3660

       Plaintiff,

   v.                                                                                    ORDER

Toledo Tool and Die Company, Inc.,

       Defendant.


This is a contract case in which plaintiff, Faurecia Automotive Seating, Inc. [Faurecia], a

Delaware corporation, brings claims against Toledo Tool and Die Company, Inc. [Toledo Tool], an

Ohio corporation, for breach of contract and promissory estoppel. Faurecia contends that "Letters

of Intent" signed by both parties formed a binding and enforceable contract for sales of automotive

parts to plaintiff. Plaintiff argues that by rejecting the terms of a subsequent "Nomination Letter,"

Toledo Tool breached the contract. Faurecia also brings a promissory estoppel claim against Toledo

Tool, alleging that it detrimentally relied on Toledo Tool's promises. Jurisdiction exists under 28

U.S.C. § 1332.


1

Pending is Toledo Tool's motion for judgment on the pleadings as to the breach of contract and promissory estoppel claims. [Doc. 11]. For the reasons discussed below, Toledo Tool's motion shall be granted.

## Background

Faurecia supplies automotive parts and components directly to automotive manufacturers, and at times to other suppliers. Toledo Tool, a sub-supplier, negotiated with Faurecia to supply component parts for automobile seats. Their negotiations resulted in two Letters of Intent, dated October 11, 2007 and November 9, 2007. The Letters of Intent provide:

> Faurecia Automotive Seating (FAS) is pursuing a Nomination Letter and Contract with TTD [Toledo Tool] regarding the Epsilon II and Derivative Sidemember4W-6W for the Epsilon II and Derivative 2009 Program.

[Doc. 1, Ex. 1].

The next paragraph states:

> *This letter of intent (LOI) is dependent on the final mutual agreement* to the terms of a formal Faurecia Nomination Letter scheduled for signing October 19th, 2007. If a mutual agreement is not satisfactorily reached; this letter of intent is terminated without liability to Faurecia. Faurecia's General Terms & Conditions will apply to this (LOI) dated October 11th, 2007.

[*Id.*] [Emphasis supplied].

The Letters continue:

> Following the recent conclusion of the Faurecia and TTD negotiations, Faurecia is please[d] [sic] to say we have reached *an agreement in principal* [sic], according to the conditions discussed. This letter of intent will provide a summary of the key points discussed and agreed on. This letter also includes additional important points included in our formal Faurecia Nomination Letter.

[*Id.*] [Emphasis supplied].

The Letters conclude:

2

> This LOI will be replaced by a formal "Faurecia Nomination Letter" signed by
> Faurecia and TTD. Target date is October 19th, 2007.

[*Id*.].

Faurecia issued the Nomination Letter to Toledo Tool's Director of Sales on November 15,

2007. The Nomination Letter contained provisions that the Letters of Intent did not include or

reference. For example, the Nomination Letter stated:

> SELLER will participate in BUYERS steel re-sale program. SELLER will not
> increase Product price for the life of the program and relevant Purchase Order
> Contracts.

[Doc. 12, Ex. 3].

> All Product produced from production intent tooling will be priced at the
> production Product pricing.

[*Id*.].

> SELLER assumes all responsibility for Returnable Packaging, including design
> (subject to BUYER approval). Any product damage occurring as a result of
> shipping/packaging will be the sole responsibility of SELLER.

[*Id*.].

On November 16, 2007, Toledo Tool informed Faurecia that it would not produce and sell

the automotive components to Faurecia. Faurecia subsequently filed this suit and seeks an award of

money damages sufficient to compensate it for all forms of economic loss, and all other costs

incident to plaintiff's claims. Plaintiff also seeks legal fees and related costs resulting from Toledo

Tool's failure to perform under the contracts and promises, and all other just, equitable or

appropriate relief.

Faurecia contends that the Letters of Intent created an enforceable and binding contract

between itself and Toledo Tool, and that Toledo Tool breached that contract by rejecting the

Nomination Letter. Toledo Tool posits that the Letters of Intent did not constitute a final and binding contract. It also argues that Faurecia added terms to the Nomination Letter; therefore, Toledo Tool was justified in its rejection of the Letter. Faurecia brings a breach of contract claim against Toledo Tool on the basis of its rejection of the Nomination Letter. Faurecia also asserts that the Letters of Intent expressed promises that give rise to its promissory estoppel claim.

### Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings close, but within such time as not to delay trial. The same standard of review applies to both Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group*, 463 F.3d 478, 487 (6th Cir. 2006). Only the timing of the motions differs.

When deciding a motion brought pursuant to Rule 12(b)(6), I limit my inquiry to the content of the complaint, although I may also consider matters of public record, orders, items appearing in the record, and attached exhibits.[1] *See Yanacos v. Lake County*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). A court must dismiss a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which a court can grant relief if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ----- U.S. ----, 127 S.Ct. 1955, 1974, (2007).

---

[1]

Plaintiff erroneously argues that I must convert Toledo Tool's Rule 12(c) motion to one for summary judgment because of Toledo Tool's attachment of the Nomination Letter to its pleadings. In fact, "the Sixth Circuit has held that when a document is referred to in the complaint and is central to the plaintiff's claim . . . the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (citation omitted). In this case the Nomination Letter, like the Letters of Intent, plays a central role in plaintiff's claim.

I must accept all well-pleaded material allegations stated in the complaint as true and view

the complaint in the light most favorable to the plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283, 298

n.4 (1986). I am "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

at 286.

### Discussion

A federal court exercising diversity jurisdiction applies the choice of law rules of the state

in which it sits. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Where

no dispute exists regarding federal choice of law, federal courts apply the law of the forum state.

*See, e.g., Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764 (6th Cir. 2008) (observing that the forum

state's law applies when  parties fail to dispute choice of law); *Wood v. Mid-Valley, Inc.*, 942 F.2d

425, 426 - 27 (7th Cir. 1991) ("[W]hen neither party raises a conflict of law issue in a diversity case,

the federal court simply applies the law of the state in which the federal court sits. . . . Courts do not

worry about conflict of laws unless the parties disagree on which state's law applies"). In this case,

the Letters of Intent do not include a choice of law provision, and the parties do not dispute the

application of Ohio law.[2] I will therefore apply Ohio law to this case.

### 1. Does Ohio Common Law or ORC Section 1302 Apply?

Although the parties do not dispute the applicability of Ohio law, they disagree as to whether

O.R.C. § 1302 (which adopts the provisions of the Uniform Commercial Code governing the sales

of goods), *see GJP Enters, Inc. v. Performance Contracting, Inc.* 2006 WL 2381492, at * 14 (N.D.

---

[2]

Plaintiff notes that the Nomination Letter includes a Michigan choice of law provision, but that
because there is dispute over the applicability of the Letter, plaintiff concedes that Ohio law is used
as the forum law. Plaintiff, however, reserves choice of law arguments, despite defendant's
contention that Michigan and Ohio laws regarding breach of contract are the same. [Doc. 14, n.3].

Ohio), applies to Faurecia's breach of contract claim. Section 1302 and Ohio common law set forth

differing standards for contract formation. Both, however, require a finding of intent to form a valid

contract.

To plead breach of contract under Ohio common law, a plaintiff must allege: "1) the

existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4)

damage or loss to the plaintiff." *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314

F.Supp.2d 763, 769 (N.D. Ohio 2004).

Under Ohio common law, contract formation requires "mutual assent (generally, offer and

acceptance) and consideration. The plaintiff must also show . . . a meeting of the minds and that the

contract was definite as to its essential terms." *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11 (1998).

Section 1302.07 of the Revised Code, which adopts the UCC, defines formation of a

contract:

> (A) A contract for sale of goods may be made in any manner sufficient to show
> agreement, including conduct by both parties which recognizes the existence of
> such a contract.
>
> (B) An agreement sufficient to constitute a contract for sale may be found even
> though the moment of its making is undetermined.
>
> (C) Even though one or more terms are left open a contract for sale does not fail
> for indefiniteness if the parties have intended to make a contract and there is a
> reasonably certain basis for giving an appropriate remedy.

Whether the UCC or Ohio common law governs the Letters of Intent, a plaintiff must

plausibly plead that both parties shared an intent to form a contract. Despite the fact that the

> UCC takes a liberal view towards what is required to create a contract for the sale of
> goods . . . nothing in the UCC or Ohio's code eliminates the requirement that, for a
> contract to be enforceable, it "must . . . be specific as to its essential terms, such as
> the identity of the parties to be bound, the subject matter of the contract,
> consideration, a quantity term, and a price term."

*E.C. Styberg Engineering Co. v. Eaton Corp.*, 492 F.3d 912, 917 (7th Cir. 2007) (quoting *Alligood v. Procter & Gamble Co.*, 72 Ohio App.3d 309, 311 (1991)).

Thus, under either approach – the UCC or Ohio common law – the plaintiff must show that the Letters of Intent manifest an intent to be bound mutually to a binding, enforceable contract.

### 2. Did the Parties Intend for the Letters of Intent to
### Form Binding and Enforceable Contracts?

Rules of contract formation dictate that courts look to the plain language of the contract to determine contractual intent. *See, e.g., Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 314 (1996) ("The intent of the parties is presumed to reside in the language they choose to use in their agreement."); *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

### A. The Letters of Intent Were "Dependent on" a "Final Mutual Agreement"

The Letters of Intent begin by stating that Faurecia "is pursuing a Nomination Letter and Contract" with Toledo Tool and that the Letters are *"dependent on* the final mutual agreement to the terms of a formal Faurecia Nomination Letter scheduled for signing October 19th, 2007." [Emphasis added]. The inclusion of conditions signifies that the parties did not intend for the Letters of Intent to form a final, binding contract.

In the Sixth Circuit, "if [an] obligation, in order to become binding, rests on a future agreement to be reached by parties, so that either party may refuse to agree, there is no contract." *General Motors Corp. v. Keener Motors*, 194 F.2d 669, 676 (6th Cir. 1952) ("As long as both parties contemplate that something remains to be done to establish contractual relationship, no contract has been made."); *see also Watkins & Sons Pet Supplies v. Iams Co.*, 254 F.3d 607, 615 (6th Cir. 2001).

In this case, the Letters of Intent hinged on mutual agreement as to the terms of the Nomination Letter. The Letters acknowledged the possibility that the parties might not reach such an agreement. While the parties had agreed on the fundamental terms of quantity, price and timing, the parties did not contemplate a final buy/sell agreement until reaching mutual agreement to the terms and conditions of the Nomination letter.

### B. The Letters of Intent Stated That the Parties Reached Only an "Agreement in Principle"

The Letters of Intent also specified that the parties reached an "agreement in principal [sic]." While the Sixth Circuit has not conclusively defined the term "agreement in principle," in general, the court has indicated that the term signifies a preliminary agreement, and not a final, binding contract.

For example, in *Toxco, Inc. v. Transchem, LLC*, 42 Fed. Appx 712 (6th Cir. 2002) (Unpublished disposition) the Sixth Circuit upheld the district court's grant of summary judgment to defendants. It found that the agreement in question did not constitute a final contract, especially because the parties labeled it an "agreement in principle" and stated that the agreement "anticipates that a sales contract by and between Toxco and Transchem *will be* consummated." *Id*. at 714. [Emphasis added]. The parties had recognized that they needed to reach agreement on more details before creating a binding legal obligation. *See also, General Motors Corp., supra,* 194 F.2d at 676; *Horvath v. McCord Radiator & Mfg Co.,* 35 F.2d 640, 642 (6th Cir. 1929) ("[W]here the parties recognized there should be further agreement before a complete legal obligation, they expressed what is commonly called 'an agreement in principle.'").[3]

---

[3]

Several other courts have also ruled that "agreements in principle" fall short of forming binding, final contracts. *See, e.g., Henchman's Leasing Corp. v. Condren,* 1989 WL 11440, at *4 (S.D.N.Y.)

In addition to the lack of intent manifest in the reference to an "agreement in principle," the Letters of Intent referenced the parties' "pursuit" of a Nomination Letter and Contract and expressly stated that the Letters of Intent depended on a final mutual agreement to the Faurecia Nomination Letter. Any agreement reflected in the Letters of Intent was merely preliminary, and not a final and binding contract.

### 3. The Letters of Intent are Illusory Contracts

Toledo Tool also argues that the statement in the Letters of Intent that, "[i]f a mutual agreement is not satisfactorily reached; this letter of intent is terminated without liability to Faurecia", causes the Letters to lack both consideration and mutuality.

In Ohio, a valid and enforceable contract requires consideration and mutuality and should not rest on an illusory promise. *See Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 145 n.22 (6th Cir. 1983) ("If the underlying contractual obligation is predicated on an illusory promise, the contract  fails for want of mutual obligation." (citation omitted)). An illusory contract arises when "by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory."

---

("negotiations [had] reached a common understanding on fundamental terms of a proposed contract, but [had] not resolved all details and have not made a legally binding commitment.   .   .   . Ordinarily, the use of this formula would be understood to convey that there is no legally enforceable contract."); *Cohen v. Singer,* 2001 WL 138395, at *2 (2d Cir.) (finding that "the 'contract' amounted to no more than an 'agreement to agree'" especially because the agreement "explicitly characterizes [itself] as an agreement in principle and a letter of intent.")*; Jeffrey Hart Group, Inc. v. Int'l Motion Control, Inc.*, 2002 WL 34350532, at *2, n.11 (W.D.N.Y.) (noting that letters of intent are generally not binding)*; Spillway Investments, L.L.C. v. Pilot Travel Centers L.L.C.,* 2005 WL 517498, at *5 (E.D. La.) ("Under applicable Louisiana law, agreements in principle or letters of intent referring to subsequent formal agreements to be executed are not binding on the parties, even where the instrument thoroughly details the proposed terms and conditions.").

*Source Assocs, Inc. v. Valero Energy Corp.*, 273 Fed. Appx. 425, 428 (6th Cir. 2008) (Unpublished disposition).

By giving Faurecia an exclusive right to terminate the Letters without liability only as to it, while failing to give the same right to Toledo Tool, the Letters of Intent are illusory.

Faurecia argues that its obligation to negotiate in good faith under the UCC creates mutuality. The Letters of Intent, however, expressed no such obligation, and the general principle that the parties should negotiate in good faith does not overcome the express language of the agreement. That language gave Faurecia the exclusive right to terminate the Letters without liability.

### 4. Plaintiff's Promissory Estoppel Claim Fails for Lack of a Clear and Unambiguous Promise

Plaintiff also brings a promissory estoppel claim against Toledo Tool.

In Ohio, a claim for promissory estoppel requires plaintiff to plead: 1) a clear and unambiguous promise; 2) reasonable and forseeable reliance by the party to whom the promise was made; and 3) injury resulting from such reliance. *Andersons, Inc. v. Consol, Inc.,* 348 F.3d 496, 502 (6th Cir. 2003). Toledo Tool argues that it made no clear and unambiguous promise.

To be "clear and unambiguous," the promise cannot be conditional. *Andersons, Inc. v. Consol, Inc*. 185 F.Supp.2d 833, 840 (N.D.Ohio 2001). *See, e.g., Advanced Marine Tech., Inc. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 381 (S.D.N.Y.1998) ("And AMT's claim fails essentially for the same reason as its contract claim. Victory and, to the extent that he spoke for it, Burnham made it unmistakably clear that any obligation to proceed was conditional upon the execution of a written contract.").

The language of the Letters of Intent is conditional, rather than unqualified:

> This letter of intent (LOI) is *dependent on the final mutual agreement* to the terms of a formal Faurecia Nomination Letter scheduled for signing October 19th, 2007. If a mutual agreement is not satisfactorily reached; this letter of intent is terminated without liability to Faurecia.

[Emphasis supplied].

In view of this language, no clear and unambiguous promise existed. Instead, the Letters envisioned later formation of a final mutual agreement between the parties. While the parties may have anticipated and even expected that they would reach such agreement, there was no guarantee that they would do so. Absent such certainty, any assurances on Toledo Tool's part were conditional, and manifested a possibility that a mutual agreement might not arise.

The situation in this case is similar to that in *Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, 503 (6th Cir. 2003), in which the Sixth Circuit held that a claim for promissory estoppel could not stand when based on a letter of intent that "condition[ed] defendant's entrance into a lease agreement on 'successful' negotiation of a 'definitive' lease agreement." "Because defendant's intent letter, at a minimum, is ambiguous as to whether defendant promised to enter into a lease agreement," the court stated, "any such promise is not 'clear and unambiguous' for purposes of promissory estoppel." *Id*. at 504.

That this is how Faurecia read and applied the Letters of Intent is clear from its inclusion of additional terms and conditions in the Nomination Letter. Had it believed that a binding contract already existed, it would not have sought unilaterally to add additional terms.

Defendant is entitled to judgment as to plaintiff's promissory estoppel claim.

## Conclusion

For the foregoing reasons, it is hereby:

11

ORDERED THAT defendant Toledo Tool's motion for judgment on the pleadings [Doc. 11] be, and the same hereby is granted as to Faurecia Automotive Seating's claims for breach of contract and promissory estoppel.

So ordered.

s/James G. Carr

James G. Carr

Chief Judge
